IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| Kenneth Martin Molnar, | ) | Bankruptcy No. 10 B 35853 |
| | ) | |
| Debtor. | ) | |

## OPINION ON MOTIONS OF FORD MOTOR CREDIT CO. LLC'S TO CONFIRM TERMINATION OF AUTOMATIC STAY [DOCKET NO. 31] AND DEBTOR'S MOTION TO REDEEM [DOCKET NO. 30]

### BACKGROUND

Debtor, Kenneth Molnar, is appearing *pro se* in this matter. His creditor Ford Motor Credit Company LLC ("Ford") holds a security interest in Debtor's vehicle, a 2002 Ford Taurus. Debtor filed for bankruptcy relief under Chapter 7 on August 11, 2010. On August 24, 2010, he filed a Statement of Intention, expressing his intent to redeem the vehicle or, in the alternative, to reaffirm the debt secured by it. Debtor's First Meeting of Creditors was set for and held on September 15, 2010. On September 29, 2010, Debtor filed an Amended Statement of Intention, stating his intention to redeem the vehicle and attaching an "Offer to Redeem Debt."

Between August 24 and October 15, 2010, Debtor communicated with Ford on ten separate occasions, nine of which Debtor initiated by phone calls. Debtor also sent a copy of his Amended Statement of Intention to Ford. During his phone calls to Ford, Debtor stated his intention to redeem the vehicle and asked to discuss the possible terms of the redemption with someone from Ford. (Trans. Nov. 29, 2010, at 12–23.) Despite those efforts by Debtor, no one from Ford responded in any substantive way to those communications by Debtor, and no person

1

responded to his requests to discuss redemption terms. On October 25, 2010, Debtor filed a Motion to extend the stay so as to delay Ford's collection efforts, coupled with his request and motion to redeem the car. On October 29, 2010, Debtor filed a separate Motion to redeem his vehicle for $250, noticing it for December 9, 2010.

On November 2, 2010, Ford filed its Motion to Confirm Termination of Automatic Stay, asserting that pursuant to 11 U.S.C. §§ 521(a)(2) and 362(h)(1) the automatic stay had terminated automatically as to Debtor's vehicle on October 16, 2010, thirty days after the First Meeting of Creditors. An evidentiary hearing on that Motion was heard on November 29, 2010, whereat the following communications by Debtor to Ford in his effort to redeem the vehicle were proven without contest:

> (A) Debtor initiated phone calls to representatives in Ford's bankruptcy department on:
> > (1) August 24, 2010;[1]
> > (2) September 1, 2010;
> > (3) September 2, 2010;
> > (4) September 24, 2010;
> > (5) September 27, 2010;
> > (6) October 5, 2010;
> > (7) October 7, 2010;
> > (8) October 13, 2010;
> > (9) October 15, 2010; and
> 
> (B) on September 30, 2010 Debtor also filed an Amended Statement of Intention with an attached Offer to Redeem on September 29, 2010, which he sent to Ford.

During the phone calls Debtor stated his intention to redeem the vehicle and requested to discuss the terms of the redemption with someone from Ford. Ford's representatives did not respond in any meaningful way to Debtor's communications, other than to suggest that he discuss with his

---

[1] While Debtor stated that the first phone call occurred on October 24th, it is clear that he meant to say that the first call was in August. *See* Trans. at 12–13.

2

attorney potentially filing a motion, even though he told the people at Ford that he had no lawyer.

Ford filed a Motion to Modify Automatic Stay on November 22, 2010, which was noticed for and presented on November 29, 2010. Debtor provided proof of insurance on December 2, 2010, and seeks to redeem for the full amount of actual value of the vehicle. If he can do so and produces enough money to redeem for the value of the car, that will provide adequate protection and warrant denial of the lift stay motion. However, Ford argues that Debtor's offer and Motion to Redeem came too late to be considered. For reasons discussed below, Debtor's Motion to Redeem did not come too late and evidence will be taken as to value of the vehicle on December 15, 2010.

## DISCUSSION

As the facts are not contested, (Trans. 36) only legal issues remain.

Under 11 U.S.C. § 521(a)(2) and § 362(h)(1)(B), an individual Chapter 7 Debtor who intends to redeem secured property must file a Statement of Intention stating his desire to redeem the property, and

> within 30 days after the first date set for the meeting of creditors . . . or within such additional time as the court, for cause, within such 30-day period fixes, the debtor shall *perform* his intention with respect to such property.

§ 521(a)(2)(B) (emphasis added). Section 362(h)(1) also states that the automatic stay will terminate, and the property will no longer be part of the bankruptcy estate, if the debtor fails to take the necessary action within the time frame set by § 521(a)(2). Under § 521(a)(6), however, an individual Chapter 7 debtor will

> not retain possession of personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property unless the debtor, not later than 45 days after the first meeting

3

of creditors . . .
(B) redeems such property from the security interest . . .

§ 521(a)(6).

Both 521(a)(2), read in conjunction with § 362(h)(1) (hereinafter "(a)(2)"), and 521(a)(6) (hereinafter "(a)(6)") describe what an individual Chapter 7 debtor that wishes to redeem secured property must do, as well as the consequences for failing to follow those steps. Under both (a)(2) and (a)(6), failure to follow those provisions results in termination of the automatic stay with respect to the property. However, the time frame allowed under these provisions differ: (a)(2) requires the debtor to act in thirty days, while (a)(6) allows forty-five days. Debtor filed his Motions to redeem and for an extension of the stay between thirty and forty-five days after the First Meeting of Creditors.

The foregoing history and evidence raise two separate legal issues: First, what is the time frame within which the Debtor was obliged to act (thirty days under § 521(a)(2) and 362(h), or forty-five days under § 521(a)(6)); and second, what actions must a debtor take within the applicable time period in order to prevent the stay from being lifted.

**A. Debtor was required to "perform his intentions" within thirty days after the first date set for the Meeting of Creditors, October 16, 2010.**

Section 521(a)(2), in conjunction with § 362(h), requires a debtor to: (1) file a Statement of Intention indicating reaffirmation, redemption, or surrender of "personal property . . . securing in whole or in part a claim" at a point no later than thirty days after the debtor's case is filed, and (2) "perform" such intention within thirty days after the first date of the meeting of creditors. Failure to do so results in the termination of the automatic stay as to personal property, which then ceases to be property of the debtor's bankruptcy estate. Section 521(a)(6) requires a debtor

4

to redeem personal property "which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property" within forty-five days after the first meeting of creditors, or the automatic stay is terminated. Debtor timely filed his Statement of Intention, so the remaining issue is what else did he have to do and when was he required to do it.

These provisions differ in a number of ways pertinent to the issues presented here.[2] First, (a)(6) is narrower in scope than (a)(2). Subsection (a)(2) applies to "debts secured by property of the estate," while (a)(6) only applies to "personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property." Second, (a)(2) gives the debtor thirty "days after the first date set for the meeting of creditors" to perform his intention to redeem, whereas (a)(6) allows forty-five days "after the first meeting of creditors" to redeem. Subsection (a)(6) allows at least fifteen days more to redeem than (a)(2) allows, and possibly even more considering the fact that first meeting of creditors may actually be held after the first date scheduled for it to be held. *See In re Norton*, 347 B.R. 291, 299–300 n.10 (Bankr. E.D. Tenn. 2006) (discussing the discrepancies between subsections (a)(2) and (a)(6)). Third, (a)(2) specifies that debtor "perform his intentions" to redeem, while (a)(6) requires specifically that debtor redeem the property within the fixed period.

To determine the time frame applicable to the facts here, it is first necessary to determine which of the statutory provisions apply here; that is, whether Debtor's vehicle fits into the category of property discussed in (a)(6) or in (a)(2). If it fits exclusively into one of the

---

[2] There are other differences that would have no effect in the case at bar. For example, (a)(2) requires the debtor to file a Statement of Intention, on which subject (a)(6) is silent. Since Debtor here filed a timely Statement under (a)(2), it is not relevant to the discussion.

categories, that subsection's time limit would be the applicable one.

It must be concluded that subsection (a)(2) applies, since it covers any personal property that secures a claim, a definition broad enough to cover Debtor's vehicle here.

Subsection (a)(6) was added to the Bankruptcy Code as part the BAPCPA Amendments in 2005, and it, and its interplay with (a)(2) and other sections of the Code, have been found confusing. *See In re Donald*, 343 B.R. 524, 529 (Bankr. E.D.N.C. 2006) (about the BAPCPA amendments- "[d]eciphering this puzzle is like trying to solve a Rubik's Cube that arrived with a manufacturer's defect"). There have been several opinions discussing (a)(6), and two interpretations of the terms "allowed claim" and "for the purchase price" have emerged. *In re Rice*, 2007 Bankr. LEXIS 945 at *18 n 5 (Bankr. E.D. Pa. Mar. 12, 2007) (collecting cases). Under one narrow reading "allowed claim" is given its normal bankruptcy interpretation, and requires that a proof of claim be filed. *See, e.g., Donald*, 343 B.R. at 535–36. Ford has not filed a claim in this case, and therefore under this reading (a)(6) does not apply. The other more expansive interpretation based on legislative history shows that (1) claims are rarely filed in no-asset Chapter 7 cases, (2) the legislative history of (a)(6) does not refer to an allowed claim, and (3) the legislative history does not distinguish between asset and no-asset cases. *In re Rowe*, 342 B.R. 341, 348–49 (Bankr. D. Kan. 2006) (citing *United States v. Ron Pair Enters.*, 489 U.S. 235, 242–43 (U.S. 1989)). The *Rowe* opinion would delete the word "allowed" out of the term "allowed claim." *Id.* By doing so, it gives (a)(6) much wider applicability, and would include Ford's claim.

Under another reading of (a)(6), "purchase price" means that the claim is "for the full purchase price." *Donald*, 343 B.R. at 536–37 (relying on the dictionary meaning). Therefore that

phrase would not apply in situations where the debtor made a down payment or has paid off part of the debt. *Id.* at 537. In this case, Debtor Molnar both put down a down payment and paid off part of the debt, and therefore under this reading, (a)(6) does not apply. Under the more expansive reading a claim for the "purchase price" is the same as a "purchase money security interest" ("PMSI"). *In re Steinhaus*, 349 B.R. 694, 706 (Bankr. D. Idaho 2006). Ford's claim to Debtor's vehicle is a purchase money security interest, and therefore under that reading would fall into the ambit of (a)(6). This broader interpretation would apply in more cases, is viewed by some as consistent with the legislative history of the provision, and provides for a reading of (a)(6) that is more logical. *See Rowe*, 342 B.R. at 349.

If Congress intended (a)(6) to apply so broadly, however, it could have so stated, as it has in other provisions of the Code. *Donald*, 343 B.R. at 536–37; *See also Miller v. DaimlerChrysler Fin. Servs. Americas, LLC*, 570 F.3d 633, 639 (5th Cir. 2009) ("[P]erceived poor drafting [in BAPCPA] should not be regarded as a license to invalidate plain-text readings in the name of fixing a statute that some believe is broken.").

If both (a)(2) and (a)(6) apply to this case (as they would under the broader reading of (a)(6)), and a debtor failed to take the necessary steps within the required period, the stay would terminate thirty days after the date set for the first meeting of creditors and then terminate again forty-five days after the first meeting of creditors. Since the same stay obviously cannot terminate twice, and there is no provision to reinstate the stay after thirty days and before forty-five days, the time-frame provision of (a)(6) would be irrelevant. In this case it must be concluded that the time frame of (a)(2) is the one that must be considered, and the automatic stay will be found to have terminated if Debtor failed to "perform his intentions" by thirty days after the First Meeting

of Creditors, a period that ended October 16, 2010.

**B. Debtor's actions within the applicable time frame were enough to "perform his intentions."**

The first date set for the First Meeting of Creditors was September 15, 2010; thus, the thirty day period in which Debtor was to "perform his intention" ended on October 16, 2010. In those thirty days, Debtor repeatedly called Ford. During those phone calls, Debtor stated his intention to redeem the vehicle and requested to discuss the terms of the redemption with someone from Ford. Debtor also filed an Amended Statement of Intention with an attached Offer to Redeem, and forwarded that Statement with the Offer to Ford. Despite those efforts by Debtor, no one from Ford responded in any substantive way to those communications by Debtor, other than to suggest that he discuss with his attorney potentially filing a motion, even though he told the persons at Ford that he had no lawyer. Debtor did not seek an extension of the time period during the thirty day period.

Debtor relied on the forty-five day time period allowed under (a)(6). (Trans. at 28). Thinking his actions were still timely, Debtor filed a Motion to extend the stay so as to delay Ford's collection actions, coupled with a request and motion to redeem the car on October 25, 2010. On October 29, 2010, Debtor filed and noticed a separate Motion to redeem his vehicle for $250.

Debtor's error in understanding the (a)(2) and (a)(6) time limits led him to file his motions to extend the time period and redeem after the thirty day time period had passed. However, if Debtor's actions within the thirty days were sufficient to "perform his intentions", the stay would not have automatically terminated under § 362(h)(1), and Debtor's motions would

still be timely. Otherwise, the automatic stay would have terminated, and his Motions would be denied as moot.

Ford's position is that Debtor's actions during the thirty-day period were not sufficient to constitute performance. It maintains that redemption is governed by Rules 6008 and 9014 Fed. R. Bankr. P., both of which require a motion and hearing on notice. Therefore, according to Ford, the minimum that qualifies as performance is the filing of an actual timely motion to redeem. Since Debtor filed his motion after the thirty day period, Ford reasons that the automatic stay lifted after thirty days and Debtor's present motions are untimely. A possible alternative view of this history is that Debtor's actions were sufficient to show performance, and therefore the automatic stay was still in effect when he filed his motions.

Debtor and Ford each provided one case discussing the issue as to what other than a timely Motion might constitute "performance".

*In re Parker*

Debtor provided *In re Parker*, 363 B.R. 621 (Bankr. M.D. Fla. 2007). In *Parker*, the debtors moved for sanctions for asserted stay violations against their creditor, who had a security interest in the debtors' van. That creditor had repossessed debtors' van forty-seven days after the first meeting of creditors, despite knowing that debtors intended to redeem the vehicle. The debtors in *Parker* filed for bankruptcy relief under Chapter 7 and timely filed a Statement of Intention indicating their intent to redeem a van. They ceased making contract payments on the vehicle at that point. Debtors obtained informal approval for a redemption loan, but had not received any funds on that loan. They also failed to inform the creditor of their efforts to obtain redemption funding or to determine whether the creditor would agree to the Debtors' valuation of

9

the van. Forty-seven days after the meeting of creditors, the creditor repossessed the van. On the same day, Debtors filed a Motion to Redeem, and Creditor returned the van. Debtors then filed a Motion for Sanctions for violation of the automatic stay.

At issue was whether "a debtor's non-public action, not communicated to a creditor, is sufficient to keep the stay in effect." *In re Parker*, 363 B.R. at 623. The *Parker* opinion stated that §521 imposes duties on debtors to perform their stated intentions, but that no similar duty is imposed on creditors. If debtor performs his duties, then the burden shifts to creditors to establish grounds for relief from stay. The simplest and clearest way debtors can establish that they timely performed their duties is by filing a motion to redeem or a reaffirmation agreement prior to the end of the allowed time. However, the opinion also made clear that compliance may be established in "less formal ways," as by debtor calling the creditor and obtaining its consent for an extension to the performance period. *Id.* at 625–26. In *Parker*, however, the debtors were found not to have kept the creditor informed, and so did not demonstrate a "minimal effort to perform" their stated intentions. *Id.* Therefore, it was held that the automatic stay terminated at the end of the forty-five day period.[3]

In *In re Hinson*, 352 B.R. 48, 50-51 (Bankr. E.D.N.C. 2006), a case not provided by either party, the Chapter 7 debtor filed a Statement of Intention indicating that she wanted to reaffirm the debt on her vehicle. The lender provided a draft reaffirmation agreement, which required the debtor to reimburse the lender for collection fees. The debtor signed the agreement, but struck the reimbursement provision. The *Hinson* opinion held that the debtor's actions were

---

[3] Since the creditor in *Parker* did not repossess the debtors' van until after forty-five days had passed, it held that "the time difference, 30 versus 45 days, is irrelevant." *Parker*, 363 B.R. at 624 n 5.

10

enough to fulfill the mandates of § 521(a)(2)(b). *Hinson*, 352 B.R. at 50–51.

In so holding, it relied on *In re Price*, which held that debtors were not required to "entirely consummate their stated intention within" the time frame allowed." *Id.* (citing *In re Price*, 370 F.3d 362, 372 (3d Cir. 2004)). According to *Hinson*, "[t]his interpretation is reasonable, as a debtor could take the necessary steps to reaffirm the debt on a timely basis but then face hurdles because the creditor fails to sign the agreement." *Hinson*, 352 B.R. at 50–51. Accordingly, all that is required of debtors is to "take steps to act on an intention to either retain or surrender" the property. *Price,* 370 F.3d at 372. The debtor was found to have met the requirements of §521(a)(2)(b), since the debtor took steps to reaffirm the debt.

Unlike the debtors in *Parker*, and like the debtor in *Hinson*, Molnar took several steps to perform his stated intention and certainly kept Ford informed. He filed an amended Statement of Intention and did what he could to redeem. He could have safely filed his Motion to Redeem before the thirty-day period had passed. However, being a *pro se* debtor, his honest and repeated attempts to discuss redemption with Ford clearly "took steps to act on his intention," *Hinson*, 352 B.R. at 50–51, and demonstrated more than "minimal effort to perform," *Parker*, 363 B.R. at 625–26, his stated intentions.

### *In re Cowgill*

Ford provided an unpublished opinion, *In re Cowgill*, 2008 Bankr. LEXIS 2900 (Bankr. N.D. Ohio Sept. 26, 2008), in support of its Motions. *Cowgill* dealt with a Chapter 7 debtor's motion for contempt alleging a violation of the automatic stay after the secured lender repossessed debtor's van. The debtor there had timely filed a Statement of Intention, stating his intention to reaffirm the debt on his van. Additionally, debtor and his counsel informed the

11

lender of the debtor's intent to reaffirm, and at one point the lender attempted to contact the debtor's counsel. However, no reaffirmation agreement was executed, and the lender repossessed the car. The *Cowgill* opinion held that the lender's repossession did not violate the automatic stay because the debtor failed to perform his "expressed intention" under § 521(a)(2)(B), and the stay was therefore terminated.[4] To find performance, that opinion held, the debtor must minimally attempt to enter into a reaffirmation agreement, which is generally evidenced by "at least" drafting a reaffirmation agreement. *Cowgill* at *10–11. Debtor's failure to comply with § 521(a)(2)(b) allowed the automatic stay to be lifted. The opinion noted, however, that there may be circumstances in which the creditor could be found to violate the stay, including a scenario "in which the creditor misleads the debtor as to its intent and course of action in order to run the debtor out of time and strike." *Id.* at *12.

Debtor Molnar repeatedly attempted to discuss terms of the redemption with Ford. Ford's staff, however, never assigned someone to discuss the subject with Debtor, and instead Ford waited. It then filed its motion, seeking declaration that the stay had terminated. Ford's people never told Debtor that it did not wish to allow Debtor to redeem, and it never disagreed with Debtor's proposed terms. In effect, whether or not intended, Ford strung Debtor along. Debtor was thereby misled, at least insofar as he thought Ford would at some point discuss the redemption with him, and as a *pro se* debtor he did not then understand the possible motion he could file to safely preserve the issue and his rights before time ran out.

---

[4] The opinion also discusses an alternative to performance of the debtor's "expressed intention" under § 361(h)(1)(B) which applies only to reaffirmations and is not relevant to Debtor's attempt to redeem here.

12

The aforementioned opinions suggest that an alternative to actual filing of a motion to redeem can operate to fulfill a debtor's obligations under 11 U.S.C. § 521(a)(2) and § 362(h)(1) to "perform his intention" in time. Ford has not provided any binding precedent as support for the proposition that the only way a debtor can "perform his intention" is through filing a timely motion. The reasoning in those opinions support the ruling in this case that the automatic stay here was not terminated due to Debtor's repeated and strenuous efforts to redeem his vehicle within the thirty-day period. Molnar did "perform his intention" by doing all that he knew to perform, and therefore the automatic stay remained and remains in effect.

An evidentiary hearing is set for December 15th, 2010, at 2:00 p.m. to value the vehicle on Debtor's Motion to Redeem and to determine whether Debtor can pay that value. If he can pay the full value of the vehicle as that hearing will determine, Ford's Motion to Modify Automatic Stay will be mooted by protection consisting of such payment.

Accordingly, for reasons mentioned herein, an order will be entered separately extending the stay as to Debtor's vehicle until conclusion of the hearing on December 15th to value the collateral. Ford's Motion to Confirm Termination of Automatic Stay will be denied, and its Motion to Modify Automatic Stay is continued to December 15, 2010 at 2:00 p.m.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 15th of December, 2010.

13